UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | |
|---|---|
| BYRON STREETER #274192, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:08-cv-178 |
| ) | |
| v. ) | Honorable R. Allan Edgar |
| ) | |
| UNKNOWN BELUSAR, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McConnaughey, Charlebois, Lintula, Vinning, Bonevelle, Jones, and Rapleje. The Court will serve the complaint against Defendant Belusar.

**Discussion**

    I.        Factual allegations

Plaintiff Byron Streeter #274192, an inmate at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Unknown Belusar, Corrections Officer Unknown McConnaughey, Corrections Officer Unknown Charlebois, Corrections Officer Unknown Lintula, Corrections Officer Randall Vinning, Jr., Corrections Officer Unknown Bonevelle, Corrections Officer Unknown Jones, and Deputy Warden Unknown Rapelje.

In his complaint, Plaintiff alleges that on November 24, 2006, he had his window covered when Defendant Belusar gave him a direct order to remove the towel that was covering his window. Plaintiff complied with the order, but was nonetheless sprayed with a chemical agent. On November 25, 2006, Defendant Belusar ordered that Plaintiff be placed on restriction of his clothing, mattress, and towel. Plaintiff was taken off the restriction on December 9, 2006, at which point he asked staff to return his property, to no avail. On December 30, 2006, Plaintiff filed a grievance against Defendant Belusar for refusing to return his state issue clothing. Defendant Belusar reviewed the grievance with Plaintiff, in violation of policy, and demanded that Plaintiff sign off on the grievance. When Plaintiff refused, Defendant Belusar called Plaintiff a "nigger, cock-sucker, bitch and stupid ass," and threatened to kill Plaintiff and his mother. Plaintiff then filed a grievance against Defendant Belusar for threatening his mother. Plaintiff states that Defendant Belusar has access to his mother's address and phone number, so that Plaintiff believed that Defendant Belusar would follow through on his threats.

Plaintiff asserts that Defendants' conduct violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks damages.

      II.    <u>Failure to state a claim</u>

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff fails to name Defendants McConnaughey, Charlebois, Lintula, Vinning, Bonevelle, Jones, and Rapleje in the body of his complaint. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants McConnaughey, Charlebois, Lintula, Vinning, Bonevelle, Jones, and Rapleje were personally involved in the activity which forms the basis of his claim. As noted above, Plaintiff fails to name Defendants

McConnaughey, Charlebois, Lintula, Vinning, Bonevelle, Jones, and Rapleje in the body of his complaint. Therefore, Defendants McConnaughey, Charlebois, Lintula, Vinning, Bonevelle, Jones, and Rapleje cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants McConnaughey, Charlebois, Lintula, Vinning, Bonevelle, Jones, and Rapleje are properly dismissed for lack of personal involvement.

Plaintiff claims that Defendant Belusar's conduct violated his rights under the Eighth Amendment. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of a chemical agent must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated

in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Plaintiff's claim fails because it is clear from the record that there was a penological justification for the use of a chemical agent, and, thus, the chemical agent was constitutionally permissible. According to the step I response to grievance number LMF 06-11-4339-17i, which is attached to Plaintiff's complaint, a chemical agent was administered because Plaintiff was noncompliant with staff orders. The step III response to this grievance states that Plaintiff refused to be interviewed on the grievance and that the step I and II responses adequately address the merits of Plaintiff's complaint.

Inmates cannot be permitted to decide which directives they will obey and when they will obey them. *See Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). In circumstances where lawful orders or rules are being disregarded, prison officials are entitled to use a reasonable amount of force to obtain compliance. *Id.* "One can quickly reason what would happen in a maximum security prison without proper discipline." *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). In an unpublished case, the Sixth Circuit stated:

> Plaintiff was sprayed with gas only after he refused to allow Officer Beesley to place him in restraints. Under these circumstances, the defendants acted reasonably in spraying gas at plaintiff. This allowed them to restrain plaintiff in a more peaceful manner. Therefore, it was plaintiff's own conduct which necessitated the use of the gas.

*Knuckles El v. Koskinen*, No. 97-1642, 1998 WL 415847, at *2 (6th Cir. June 16, 1998). Similarly, Plaintiff's own conduct in covering his cell window required the use of force to obtain his compliance

The decision to use a chemical agent to obtain physical control is generally preferable to the use of physical force. The response team could have attempted a "cell-rush" with shields, truncheons, and handcuffs to forcibly enter Plaintiff's cell in an attempt to subdue and restrain him. Other courts have found that these types of physical confrontations are less safe than using tear gas or mace because of the greater risk of injury to staff, the inmate, or both. *Caldwell*, 968 F.2d at 602; *Soto*, 744 F.2d at 1262. Thus, Defendant Belusar in this action chose to use a lesser degree of force. Moreover, Plaintiff does not allege that he experienced any serious physical harm as a result of being gassed. Given the undisputed facts, the decision to use a chemical agent did not violate the Eighth Amendment.

Furthermore, use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir.

Apr. 24, 1997)(verbal harassment is insufficient to state a claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at * 3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at * 2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Belusar arising from his alleged verbal abuse.

Plaintiff claims that Defendant Belusar refused to return his state issue property after the property restriction expired, thereby violating his Fourteenth Amendment due process rights. The Due Process Clause does not prohibit deprivation of property by the state; instead it prohibits such deprivations without *due process of law*. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), overruled in part on other grounds *Daniels v Williams*, 474 U.S. 327 (1986).

A plaintiff alleging infringement of property rights must show that the deprivation was caused by action taken pursuant to established state procedures. *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-436 (1982). Plaintiff herein fails to make the required distinction between challenging the "established state procedure" itself and the failure of the state employee to follow that procedure. *Id*. If the official performing the state procedure fails to follow the state procedure or conform his conduct to state law, the plaintiff's injury is the result of a "random and unauthorized act" which the state was unable to foresee and thus

prevent. In *Parratt*, the Supreme Court held that no procedural due process violation occurs when the deprivation is the result of a "random and unauthorized act," unless the state failed to provide the plaintiff with an "adequate post-deprivation remedy."

> Application of the principles recited above to this case leads us to conclude the respondent has not alleged a violation of the Due Process Clause of the Fourteenth Amendment. Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the state to follow established state procedure. There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. Moreover, the State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation.

*Parratt*, 451 U.S. at 543.

The Sixth Circuit has held that in procedural due process claims brought pursuant to 42 U.S.C. § 1983, the "Parratt doctrine" allows dismissal where the state provides an adequate postdeprivation remedy if:

> 1) the deprivation was unpredictable or "random"; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.

*Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416-417 (6th Cir. 1996). In cases where these conditions are present, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong." *Copeland*, 57 F.3d at 479; *Pilgrim*, 92 F.3d at 417.

According to the step I response to grievance number LMF-06-12-4679-03h, which is attached to Plaintiff's complaint, Defendant Mulvaney reviewed the grievance and noted:

> Prisoner was placed on mattress, state issue and towel restriction on 11-24-06. Prisoner state issue, 1 duffel bag and 1 plastic bag were placed in the Birch unit property room by [Resident Unit Officer] Dale Stromer, prisoner's property is still in the property room as of 12-30-06. Prisoner refused the return of his property by this officer, stating: "Do what you got to do Belusar."

Plaintiff in this case has not demonstrated the absence of adequate state remedies for Defendant Belusar's alleged misconduct. Plaintiff filed a grievance regarding Defendant Belusar's behavior, which he appealed through Step III. In addition, the court notes that because the property was "state issue," Plaintiff did not purchase it and has no right to reimbursement. However, it appears that Plaintiff may have his state issue property returned merely by cooperating with prison officials. The fact that the remedies provided by the state do not provide all the relief which may be available under 42 U.S.C. § 1983 does not mean that the state remedies are ineffective. *Parratt*, 451 U.S. at 544. Therefore, pursuant to *Parratt*, Plaintiff's due process claims should be dismissed.

Finally, the court notes that Plaintiff's retaliation claim against Defendant Belusar does not appear to be frivolous and may not be dismissed upon initial review.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants McConnaughey, Charlebois, Lintula, Vinning, Bonevelle, Jones, and Rapleje will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Belusar with regard to Plaintiff's retaliation claim.

An Order consistent with this Opinion will be entered.


Dated: 10/16/08                                  /s/ R. Allan Edgar
                                                  R. Allan Edgar
                                                  United States District Judge